All right, our next case for argument today is 23-1634, Bank of America v. Nant Holdings. All right, come on up. How do I say your name, Counsel? Emerick Rage-Plessis, Your Honor. Mr. Rage-Plessis, please proceed. Good morning, Your Honors, and may it please the Court. I'd like to start with the three cases that turn on the combination of Ogasawara and Bohl, where the Board made two key legal errors. First, despite its assumption that Bohl's technique would produce better results than Ogasawara's software, which was a rational motivation to combine, the Board found the combination non-obvious because the embodiments in Bohl are stationary and therefore physically different from Ogasawara's mobile device. And that was legal error because the motivation inquiry is not limited to the primary uses or physical embodiments of the prior art. Second, the Board legally erred in requiring proof that a camera flash was not only known but well-known in the art, no such legal burden exists, none of the claims here even recite a flash, and a camera flash is undisputedly part of Bohl, which was part of Bohl. And just to be clear, do you have to win all of these arguments in order to have us send it back? Are these independent bases, or do you have to win them all? Your Honor, we have to win on two bases for the three proceedings that involve the combination. The issue of what I'll call movement in terms of whether Bohl's technique could be applied to a mobile device and the issue of the flash, which the Board limited to reasonable expectation of success. With those two issues, we win on those three proceedings, Your Honor. And a camera flash, in any event, is undisputedly disclosed by Bohl, which was part of our combination. And, in fact, the patent owner's own expert here admitted that a flash would have been known to persons of skill in the art. Well, whether there is a motivation to combine, is that a question of law or fact? In general, Your Honor, it's a question of fact. But sometimes it's not? I mean in general. The qualifier doesn't, excuse me. It is a question of fact, but whether the Board applied the proper legal standard in evaluating the facts in the record is a question of law. And there has to be substantial evidence that supports the Board's result under the proper legal standard. So if you're suggesting the Board applied the incorrect legal standard, what sentence in the Board's opinion would you point me to that shows that they failed to appreciate what the motivation to combine test was? Well, I would point first to, I think it's clearest in the 004 patent proceeding, Your Honor, particularly at Appendix 190. Because in that proceeding, the Board acknowledged…  190, Your Honor. So I'm looking for a statement of law that's incorrect. So where is the statement of law that's an incorrect statement of law? To be clear, Your Honor, it's not a statement of law. Let me be clear. We're not contending that the Board misstated the legal standard. We're contending that in the way the Board applied its analysis of motivation and reasonable expectation of success, it did so improperly such that… Well, that's facts. That's fact-finding. It is fact-finding, but the substantial… But a minute ago, you told me this was a legal question. The reason I think it's a legal question, Your Honor, is that even if we accept the Board's factual premises here, they actually support a motivation to combine under the legal standard. And I think it's simple because the Board assumed, for purposes of its decisions to start out, that there was a rational reason to combine these references. It assumed our motivation that Bohl's technique would produce better results. That's at Appendix 44, 112, and 191, just for all three of those proceedings. It also assumed that Bohl had the processing… Excuse me, Ogasawara's video phone had the processing power to run that technique. That's at Appendix 61, 127, and 198. There's no finding of teaching away, and there's no dispute that these references are analogous parts. So that gets us to the issue of movement, where the Board found that pixel-perfect registration was necessary at the first step of Bohl's method. But even if we assume that, Bohl tells us that there are two ways to achieve that pixel registration for segmentation. One is to have a stationary scene, where the object and background are stationary relative to the camera. And the other is to… A piece of prior disclosures is also a question of fact, correct? That is correct, Your Honor. So in this case, the Board found, as a factual matter, that Bohl's is stationary for a critical reason associated with its segmentation method. Is that correct? That is correct, Your Honor. So why did the Board err in light of that? Well, the Board acknowledged, at that page 190 that I mentioned, that there is a quick succession teaching in Bohl, which states that Bohl's camera may be stationary, but the technique that Bohl provides allows for some motion, in the sense that if you take the images in quick succession, one right after the other, then any motion is insignificant or irrelevant to the segmentation. It does not prevent spatial registration from being sufficient to segment the images at the first step of Bohl's method. I'm sorry. Didn't the Board find that that quick succession method was for the stationary camera? It did, Your Honor, and that's because Bohl… So I don't understand. It's like you want me to just unravel all these fact findings almost de novo, it seems. We're not asking that, Your Honor. We will accept the Board's finding that Bohl relates to a stationary camera, but the fact that Bohl's inventors didn't think that a CCD video camera in this method could be applied to a mobile device doesn't mean it was non-obvious to do so. The question is whether Ogasawara's device, which is also a video CCD camera, the same type of device, is taking images in quick succession. It's a handheld camera, though, right? It is a handheld camera, Your Honor. That was the concern, that here we need some kind of essentially pixel-by-pixel accuracy when we're taking two images with the Bohl's stationary camera. And then the question is, could you really do some kind of pixel-by-pixel accuracy if you were to take two successive photos with a handheld camera? And the Board said, no, they didn't think, based on the evidence, that that would be a smart thing to try to expect shoppers at Target holding one of these handheld devices to expect that they'd be able to take two pictures in a row. That's not what you would want with that kind of a device. And so it wouldn't make sense, therefore, to do that kind of modification to Ogasawara's mobile handheld bar scanner or whatever it is. I think that's a fair summary, Your Honor, but that raises the question of whether Ogasawara's device is taking images in quick succession, which Bohl explicitly teaches is an alternative to maintaining a stationary scene. One with a flash and one without a flash. Correct, Your Honor. So now we have a customer at Target that's in an aisle looking at a product, trying to take two pictures of the product, one with a flash, one without a flash, and we're expecting that the customer will be able to hold that camera super still so that we're going to have that kind of pixel-by-pixel accuracy between the two images? Well, just to be clear, Your Honor, it's not two separate pictures. It's taking a video. So the Board assumed that Ogasawara's video phone is taking a video. So it's taking frame-by-frame video. There's no serious dispute about that. In fact, the Board acknowledged that Ogasawara is taking a video at Appendix 56, 124, and 193, which it found requires taking images, quote, in a short period of time. So that's quick succession. The Board did not analyze, however, in its discussion of motivation combined, whether Ogasawara satisfies the in quick succession embodiment in Bohl, which is taught as an explicit alternative to maintaining a fully stationary scene. I feel like you're just pointing to other evidence and a way that the Board could have made its fact-finding, but you seem to be completely ignoring the fact that we review this for substantial evidence, and the evidence in this record is that each Bohl disclosure is that pixels are being compared and they need to be in the same location. They have to be stationary. That's the fact-finding the Board made, and that is why there's no motivation to combine this with somebody moving around at Target with a camera gen hat. It's got to be stationary. So the fact-finding. Right. The fact-finding is that Bohl requires pixel-perfect registration. I understand that. Can I ask you something? Sure. What is the standard of review that we apply to that? The standard of review for fact-findings is substantial evidence. And what does that mean? I mean, for all the students in the room. Substantial evidence means that there's sufficient evidence in the record that a reasonable fact-finder could have arrived at the result, but it has to be under the right legal standard, and it has to be substantial evidence that supports the result under the right legal standard. My problem is that you keep on saying under the right legal standard, but I don't see where it was an incorrect legal standard. So assuming for a minute that it wasn't an incorrect legal standard, then what is your argument on substantial evidence? Do you have one? Because if we accept the board's findings that, number one, Bohl requires pixel-perfect registration, and that quick succession is still requiring that pixel-perfect registration, it just begs the question of whether Ogasawara's device is taking images in quick succession, and that's something the board didn't analyze. And so that's the problem here. There's a disconnect in terms of the board's analysis that simply found, well, we need pixel-perfect registration. So your primary reference, what does your primary reference teach? The primary reference Ogasawara teaches a mobile phone which has a CCD video camera. It is taking frame-by-frame video images one right after the other. And you want to modify that in view of Bohl to teach what? We want to modify Ogasawara by applying an object recognition technique that is in Bohl, which also relies on the same type of device, a video CCD camera. But it says it's important that it be stationary, or it does not disclose an embodiment in which its technique would work with a mobile device, right? Of course. And I think then we'd be in the realm of anticipation. And so what the board said, that basically it didn't think it would have been obvious to make this modification that you're proposing because it doesn't make sense where you need something that's pixel-to-pixel registration for where somebody with a camera, a cell phone, something somebody's holding, it would be a very difficult thing to do. So it seems like a difficult combination, right? A person of ordinary skill in the art wouldn't look to Bohl to modify Ogasawara. I think that's true in terms of the board crediting, you know, some testimony that this was non-trivial and prone to be erroneous. But that doesn't necessarily mean that it wasn't obvious to combine, particularly when the board- But there's contrary evidence. There's expert testimony and rationale for why a person of ordinary skill in the art wouldn't have been motivated to make that modification. Well, I'm not sure. I would say that there is expert testimony that's relevant to that question, but the board never weighed the testimony from the patent owner saying that this would be non-trivial or potentially more difficult to do on a mobile device. You found your expert's testimony to be conclusory, right? That's what the board's finding was? There is. In two of the proceedings, there is a relative credibility finding, only in two of them. But to be clear, we don't need our expert's testimony on this particular issue because there's actually no dispute, even with the patent owner's expert, that you can have some pixel errors here and it would still work, and his testimony is just that it would be non-trivial and prone to be erroneous to put this on a mobile device. You're running out of time. Do you want to just say a few seconds about the 252 patent? Yes, Your Honor. I think for the 252 patent, the issue is- You're in your rebuttal, so please be quick. Very quick. The issue is simply whether Ogoswara teaches the determining limitation of Claim 18. The board made a simple mistake that its opinion turned on. At Appendix 217, the board found that Ogoswara discloses that the user of the device verifies that an image contains an entire symbol when capturing the image, and therefore it concluded that Ogoswara couldn't possibly make that determination. But the quote that the board cites for that proposition does not say that. It says the customer can visually verify the entire image has been captured, and that was essentially the crux of what led the board astray and led it to ignore the explicit disclosures in Ogoswara itself that show that it does two steps in terms of recognizing and decoding. And with that, unless there's further questions, I'll save my time. Okay. Mr. Glass. Thank you. Thank you, Your Honor. It's a privilege to be here today, and if it may please the Court, I'll start exactly where counsel left off. The board didn't misquote Ogoswara. He left off a pretty important quote. The board went on to say that as part of the program, the customer need only inform the system that the image is ready for processing by pressing a predefined key on the system's keyboard. That's what Ogoswara is about. You have a handheld scanner. You press a button. You tell the system it's ready for processing. There's no determination stage. That's it. Ogoswara Appendix 1470, Column 2947. I'll stay on Ogoswara for a minute. In the briefs, appellant argued that, well, we need to look at Claim 12. We argue this is a new claim. This is a new argument. They said, no, it's just new evidence for the same argument we're raising below. It's not. You're talking about the 252 patent? The anticipation patent, Your Honor, 252. Okay. Correct. Claim 12 requires recognizing and translating. Below, they focus exclusively on recognizing and decoding. Ogoswara is very clear that decoding and translating are two separate steps. Decoding, I won't belabor the issue because this wasn't briefed below. Decoding is taking a barcode and just generating a number. There's no meaning behind that number. That's at Ogoswara. Why don't you move on to the motion to combine argument, if that's okay? Absolutely. I'll continue. I'll start where they started. Just give me one moment. On this notion that the board expressly found that there were better results from the combination. One of that has become, by the grave roof, that became one of their primary arguments. The board made no such ruling. In fact, the board found exactly the opposite. The council cited to Appendix 43. The board specifically stated, we find this proposed combination of teachings to simply not make sense, based on the record before us and the relevant time frame. That's where they get that the board found expressly assumed better results. Is this at page A43? This is at Appendix 43. Okay. And what part of it are you looking at? I'm sorry. I have my notes on this, but it starts with, we find, I think it's at the bottom of 43. We find no credible explanation in the record before us. Is that the sentence? We find this proposed combination of teachings to simply not make sense. Okay. Even based on the record before us. If the board found that the combination doesn't make sense, how could they have expressly assumed and expressly have found that the combination would have yielded better results? They didn't. What council pins their argument on is the next sentence where they say, even assuming that ball segmentation methods yield better results in object feature recognition as petitioner asserts. That's not an assumption they made. They said your combination doesn't make sense. So how could there be better results if the combination itself doesn't make sense? Council complained that there was no, that the board discounted their expert's testimony, that there was a relative wane. The board went much further than that. I'm reading from Appendix 42. This is in the 1081 proceeding. The board found we find Dr. Bajaj was our expert. Dr. Rodriguez was their expert. We find Dr. Bajaj's testimony on this issue much more credible than Dr. Rodriguez, which we find to be misaligned at best with Paul's explicit disclosures. Every argument they're raising today on whether there's alignment permitted in ball, these were all raised below. Their expert raised these exact arguments below, and the board found them not credible. The board actually found them misaligned with the disclosure of ball. Your Honor, just on what ball expressly requires, ball could not be clear that the pixels, I won't belabor this too much, but ball is very clear that the pixels have to be in alignment. I know, Your Honors, you're familiar with the record. Ball takes one picture without a flash, another picture with a flash. It uses what I refer to below as a brute force method of segmenting an object, like an apple or produce, from the background, and it goes one by one. It looks at one pixel from one picture, another pixel from the other picture. It looks for differences in intensity from the reflection of the flash and segments out those pixels. So what you're talking about right now, just for the students, you're identifying the substantial evidence to support the fact finding that ball requires a pixel-to-pixel registration. Is that right? Your Honor, you put it better than I did, yes. That's exactly what I'm pointing to. We cited two pages of this in ball. I'll just read what I think is the best statement. This is Appendix 1498. The pixels in each pair being compared must, must correspond to one another, i.e., be in the same respective location in each image. That's what the board based its decision on. That's what we argued below. At some point, didn't the board say something about how ball does tolerate some small amount of movement between the two images? Yes. So now we're kind of in a messy area where the board acknowledges that ball allows for some movement and yet made some conclusion that, well, whatever that amount of movement is okay with that camera, it doesn't translate over to Augusto Juarez's camera. I think it's a little more straightforward than that, Your Honor. What the board found was that ball expressójust to be clear, their proposed combination takes ball's segmentation technique, unaltered, and drops it into Augusto Juarez. What the board found was that ball is very clear that spatial registration is required. So you canóand this is what led to thisó But you can get spatial registration, apparently, with some small movement in the camera. As long as the pixels maintain alignment. So that's what led to thisóI argued this belowó That's what led to this question from the board. The pixels are pretty small, right? Exactly. So the small movement that the board was confessing ball can do, it's not just small. It has to be minuscule. Infiltestible, exactly. Vanishingly small, not just small. The board didn't say vanishingly small. I'm just trying to understand what the board was trying to get at. But that's the gist of their decision. They focus on the notion that ball states, Well, you can have spatial registration byó This is appendix 1498, column 10, line 41. Proper registration can be ensured by either acquiring the first and second image in quick succession or taking them separately. That doesn't change the fact that ball expressly states the pixels must be aligned. All the board was saying was, yes, you can take them quick, but you've got to take them really quick so that you maintain that pixel registration. This is what led to this one millimeter issue that's in the record. The board asked meóI explained this to the board belowó they asked me, well, how big is a pixel? I said, I don't know. I have no idea how big a pixel was in 2000. I said, I guess one millimeter. And I pointed out that's their burden. Ball is objectively clear that the pixels must be spatially registered. If they're going to argue that there must be some movement, that there's allowed to be some movement, they should have put in evidence. And they complained that weóI said on the fly during a hearingó that, well, I guess maybe about one millimeter. And if you look at the board's ruling, the board never used that one millimeter as part of their ruling. They stated, for example, they said on the order of one millimeter. Their ruling was based on Ball's express statement that spatial registration was required. Okay. Do you have anything else, counsel? I have one quick point. I'll make this very brief. On this alleged admission that our expert made, I would just urge your honors to lookóthis is at Appendix 2873. It spans four pages. If you look at what they quote, they take three sentences from our expert that he admitted that spatial registration wasn't required. They take one quote, one sentence from the top of one page. It's separated then by, I think, 25 or 30 lines. They take another quote from the bottom of that page. No ellipses, no indication to the court that they're combining these sentences artificially. If you look at what he testified to repeatedly, he said that is not how Ball works. That's not my testimony. Ball specifically says you need to have them in perfect registration. I won't belabor that point. I just suggest your honorsóbecause that is a big issue in their briefsó I would just suggest reading that testimony. I think it's instructive. Okay. Thank you, counsel. Thank you, your honors. Thank you. And briefly, your honor, I do want to touch on something that Judge Chen raised, which is there is an inconsistency in the factual assumptions across these decisions because in the 004 patent proceeding, the board explicitly found that Ball's quick succession embodiment allows for small unintended movement, including for the camera, including when the support for the camera is not firm, whereas in the 529 and 036 patent cases, it assumed that you couldn't have even a pixel's worth of movement, which it quantified as not even a millimeter or less. So there is an inconsistency across the factual assumptions between these board decisions. In the 004 patent case, the board went on to find that that embodiment is for a stationary camera only, but there's no principled reason and no discussion or evidence in the record as to why it should make a difference, that it is the object or background that is moving as opposed to the camera. If you have an object moving away from a camera or a camera moving towards an object, there is no principled distinction for why that should matter. It shouldn't matter that Ball's inventors didn't think that you could apply their technique to a mobile device. Ogasawara came out a few years later and put this— But Ball says that its segmentation occurs on a pixel-by-pixel basis, right? Correct, Your Honor, and quick succession addresses that. So even if there's a finding that there's some little bit of movement that can occur, you still have to have, in order to have the spatial recognition and the segmentation, accuracy on a pixel-by-pixel basis? Two quick points on that, Your Honor. That's correct for the segmentation phase, but the quick succession embodiment explicitly states that you can get to that pixel-perfect registration by taking images in quick succession. And the second point, Your Honor—I see I'm out of time. I can finish my sentence— is that this is all only about the first step of Ball, which is segmentation. There is no testimony or evidence that Ball just gives up and stops if there's a segmentation error. It keeps going and does its best at the object recognition phase, which merely requires a nearest neighbor classification or distance rule metric, and that is unaddressed by the Board's opinions. Ball only needs a best match, not a perfect match, and so even small errors in segmentation would not preclude recognizing an object, which is the goal of the invention here. Okay. I thank both counsel. This case is taken under submission. Thank you, Your Honor.